Allen, J.
I think that as the witnesses examined to prove the alleged donation vary somewhat as to the *476 precise words used by the decedent, the certificate written- an(i signed at the time and referred to and recognized by the witnesses when giving their testimony, can be more safely relied on as shewing what did actually occur, than the recollection of the witnesses after so great an interval. The facts as set out in the certificate, and I may add as proved by the witnesses, satisfy me that the decedent had no idea at the time of parting with all dominion over the subject. When a man in his last, illness attempts to dispose of his property, it is prima facie a testamentary act, unless the contrary be clearly shewn. So far from that being the case here, the words themselves import a future benefit. “ That his friend, Edward T. Jeffress, should have all the bonds of his in his possession,” imply not a present donation, but a future enjoyment. The words were also used in connexion with other words and declarations uttered and made about the same time, and all of which looked to dispositions to take effect at the death of the testator by way of last will and testament. There is nothing whatever to distinguish this from the other attempted bequests, except that in describing thé thing attempted to be bequeathed in this instance, it was referred to as being in the possession of the intended legatee.
Such was the contemporaneous construction given to these words by the party who claims under them. He attempted to set them up as a nuncupative will and failed. Yiewing the words as clearly testamentary, that they were so intended, and not as importing any present gift or parting with dominion over the thing, I am of opinion the appellee is not entitled to claim the bonds as a donatio causa mortis.
I am also of opinion, that the distributees of Paschal Fowlkes had a right, under the circumstances of this case, to maintain a suit in equity, and are entitled to a decree declaring that the bonds in question, or their proceeds in the hands of said Jeffress were a part of the *477 estate of Paschal Fowlkes, according to the principles established in Samuel v. Marshall, 2 Leigh 567, and Hansford v. Elliott, 7 Leigh 79.
But I do not think it will be regular to decree distribution until an administrator de bonis non of Paschal Fowlkes is appointed and brought before the Court; and the appellants, the plaintiffs in the Court below, should, after the right to recover is ascertained, be required to make the representative of Paschal Fowlkes a party.
We cannot, as it seems to me, treat any thing done by John Fowlkes deceased, the administrator of P. Fowlkes as amounting to a conversion of these bonds as assets by him in his character as administrator, so as to make him and his sureties responsible for the amount and interest. Because in the first place no such issue is made by the pleadings in this cause. It is not averred that John Fowlkes as administrator has collected the bonds; on the contrary it is distinctly alleged that they never were in the possession or under the control of the administrator; that they had been assigned to the firm of Jeffress & Co., were in the possession of Jeffress when the testator died, were claimed by Jeffress as his own, and collected, and the proceeds held by him as his individual property. The only claim asserted against the administrator John Fowlkes, is for his breach of trust or negligence in not having during his lifetime received the bonds into his possession.
If the debtor was insolvent, and the debt had been lost by the negligence of the administrator, though he would have been responsible to the distributees, the measure of his responsibility would not have been the same as where he had done acts amounting to an actual conversion of the assets. If this is to be considered as an actual conversion by John Fowlkes as administrator in his lifetime, then in the event of Jeffress proving insolvent, the distributees would be entitled to charge *478 John Fowlkes and his sureties with the whole aggregate amount of the bonds, with accruing interest thereon, as for money received by him. This would not only be unwarranted by any thing in the pleadings, but directly aBa'nst the allegations of the bill. If we look beyond the pleadings to the proof, there is nothing to warrant the pretension of an actual conversion of these assets by John Fowlkes. The bonds were never in his hands; he was not legally entitled to them. They had been assigned and delivered to the assignees by the testator himself. The assignees had the legal control of them, and the right to collect them without resorting to the administrator for aid. According to the opinion of this Court the assignees were trustees for the administrator. If they were about to abuse their trust, a Court of Equity might have compelled a surrender of the bonds; but unless the extraordinary jurisdiction of equity had been invoked to protect the estate from some injury of this kind, the bonds were under the legal control of the assignees. Jeffress collected them as assignee, claiming the proceeds as his own. He held them however as trustee. As such he could have been made responsible by the administrator. If through his negligence to call upon the trustee and enforce payment, the debt had been lost, the administrator might perhaps have been made responsible for the amount so lost without interest. But the trustee Jeffress was and still is the debtor to the estate of Paschal Fowlkes deceased. So far from having paid it to the administrator John Fowlkes, he has been resisting the recovery up to the present moment; and he can only be required to make payment to the regular representative of Paschal Fowlkes. Suppose he is decreed to pay the money to these distributees, and does so, and is sued the next day by the administrator de bonis non of Paschal Fowlkes as a debtor to the estate, this decree would afford him no protection. It would not even be evidence in the cause, as Paschal *479 Fowlkes' estate is not represented. He might be, and in my opinion upon the facts disclosed by this record, would properly be subjected to a decree in favour of the administrator for the amount due to the estate.
I think, therefore, the decree should be reversed and a decree entered affirming the liability of said Jeffress to the estate of P. Fowlkes deceased, for the bonds in question or the proceeds; and remanding the cause with leave to the appellants to amend by making the administrator de bonis non of P. Fowlkes deceased a party, and for further proceedings in order to a settlement of the administration accouut, and collection of the amount of the said bonds, and distribution of the estate amongst those entitled.
Baldwin, J. delivered the opinion of the Court.
The Court is of opinion, that the appellee Jeffress has shewn no right to the bonds assigned to and placed in the hands of Jeffress & Co. (of which firm he was a partner,) by Paschal Fowlkes dec’d, in his lifetime, for collection; the subsequent parol gift to said Jeffress, under which he claims, having never been perfected by delivery, which was not the less essential to its validity because the gift was in the donor’s last sickness, and in contemplation of approaching death. A donatio mortis causa is of a mixed character, being partly testamentary and partly donative : from an indulgence to the nature of the emergency, the law dispenses with the solemnities of a testament; and for that very reason requires the essentials of a gift. A delivery is indispensable to the validity of a donatio mortis causa. It must be an actual delivery of the thing itself, as of a watch or a ring; or of the means of getting the possession and enjoyment of the thing, as of the key of a trunk or a warehouse in which the subject of the gift is deposited ; or, if the thing be in action, of the instrument by using which, the chose is to be reduced into posses *480 sion, as a bond, or a receipt, or the like. In regard to such, a gift of a chose in action, distinctions founded upon the operative nature of the instrument, need not be noticed here; for, in the present case, there was no delivery of any thing. It is the naked case of an abor- ' • ^ tive nuncupative will, which the disappointed legatee is now seeking to convert into a donatio mortis causa.
’ It is not the possession of the donee, but the delivery to him by the donor, which is material in a donatio mortis causa: the delivery stands in the place of nuncupation, and must accompany and form a part of the gift: an after acquired possession of the donee is nothing ; and a previous and continuing possession, though by the authority of the donor, is no better. The donee by being the debtor or bailee or trustee of the donor, in regard to the subject of the gift, stands upon no better footing than if the debt or duty were owing from a third person. - A debt or duty cannot be released by mere parol, without consideration; and where there is nothing to surrender by delivery, the only result is, that in such a case, there cannot be a donatio mortis causa ; and the release, without valuable consideration therefor, must be by testament, or by some instrument of writing which would be effectual for the purpose inter vivos.
To allow a debtor, or one holding the property of another, to shift his relation and acquire the ownership of the subject, by parol evidence of mere words importing a voluntary donation, would introduce in such cases all the mischiefs of fraud, perjury and surprise which the law seeks, as far as practicable, to guard against, by requiring a solemn testament or an executed gift. Here, there being no delivery, the gift was in no wise executed, but only executory and ambulatory,- and might have been revoked by a subsequent testament; which shews that it was in itself merely testamentary, and occasioned in no respect a transfer, extinguishment or suspension of the donor’s dominion and ownership.
*481 And the Court is further of opinion, that John Fowlkes deceased, the administrator of said Paschal Fowlkes, having authorized the collection of said bonds by the appellee Jeffress for the benefit of the latter, and having permitted him to convert the proceeds thereof to his own use, this was a devastavit on the part of said administrator, which rendered him and his representatives responsible therefor, out of his own estate, to the distributees of his intestate, and the same not having been accounted for in any settlement of his administration, his representatives are properly chargeable therewith: and that the appellee Jeffress having been a party to such diversion of so much of the assets from their proper destination, for his own benefit, is also properly chargeable therewith; and ought to be primarily subjected therefor in this suit.
The Court, therefore, without deciding whether the administrator and distributees of Henry Fowlkes deceased, one of said distributees of Paschal Fowlkes deceased, are precluded by the compromise with the appellee Jeffress, or on any other ground, in the proceedings mentioned, from obtaining relief in regard to the subject of this suit; or whether the defendants William J. Fowlkes and Paschal J. Fowlkes are so precluded by the disclaimer in their answer — questions which seem not to have been adjudicated in the Court below — is of opinion that the said decree of the Circuit Court, dismissing the bill of the plaintiffs, is erroneous. It is therefore adjudged, ordered and decreed, that the said decree of the said Circuit Court be reversed and annulled, with costs against Jeffress and John Fowlkes’ adm’rs. And the cause is remanded to the Circuit Court, to be there proceeded in according to the principles of the foregoing opinion and decree, and the rights of the parties, in conformity therewith.